<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

September 20, 2022

Thomas A. Gentile, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
200 Campus Drive
Fourth Floor
Florham Park, NJ 07932
*Counsel for Plaintiff*

Eric Ferrante, Esq.
Nixon Peabody LLP
1300 Clinton Square
Rochester, NY 14604
*Counsel for Defendant*

## <u>LETTER OPINION FILED WITH THE CLERK OF THE COURT</u>

Re:   **Kalypsys, LLC v. Blue Label Solutions, LLC**
      **Civil Action No. 22-00510 (SDW) (LDW)**

Counsel:

Before this Court is Defendant Blue Label Solutions, LLC's ("Defendant" or "Blue Label") Motion to Dismiss the Complaint and Refer the Matter to Arbitration pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*. (D.E. 3.) This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Rule 78. For the reasons discussed below, Defendant's Motion to Dismiss the Complaint and Refer the Matter to Arbitration is **GRANTED**.

### I.   BACKGROUND & PROCEDURAL HISTORY

Kalypsys, LLC ("Plaintiff" or "Kalypsys") is a limited liability company based in New Jersey that "is engaged in the business of providing software solutions in the medical space, including . . . website and downloadable mobile applications for booking healthcare appointments." (D.E. 1 ¶ 1.) Defendant is a limited liability company based in Washington that "is engaged in the business of software development." (*Id.* ¶ 2.) During on or about December of

2019, Plaintiff sought to have Defendant develop a computer application enabling patients to book healthcare appointments with medical providers (the "Project"). (*Id.* ¶¶ 1, 5–6.) Defendant prepared an estimate for its services (the "Proposal"), which delineated the scope of, performance of, and timing of the work Defendant's employees would perform on the Project. (*Id.* ¶¶ 6–10.)

The parties negotiated and drafted a Master Services Agreement ("MSA") to delineate and memorialize the terms of the parties' agreement. (*Id.* ¶¶ 10–13.) While reviewing a draft of the MSA and discussing the arbitration clause with Stewart Skrondal of Blue Label, Dr. Amr Hosny, a co-founder of Kalypsys, "objected to the fact that the putative arbitration clause provided for arbitration in the state of Washington." (*Id.* ¶ 17.) "Dr. Hosny requested that the putative arbitration clause be changed to provide for arbitration in New Jersey." (*Id.*) Mr. Skrondal purportedly responded, "Don't worry, we've never had to use it." (*Id.*) After completing negotiations concerning the MSA, on or about January 14, 2020 the agreement was signed by a manager of Defendant and by Dr. Hosny and a co-founder of Plaintiff. (*Id.*) (*Id.* ¶¶ 10–13; *see also id.* Ex. A.)

The signed MSA contains a "Mediation, Arbitration" provision ("the Provision"), which requires that in the event a dispute arises between the parties, the parties must attempt mediation in New York, New York. (*Id.* Ex. A.) The Provision then provides that if mediation is unsuccessful, "the [p]arties agree to submit the dispute to binding arbitration in King County, Washington under the rules of the American Arbitration Association." (*Id.*) The Provision also stipulates that the parties waive the right to litigate the action in state or federal court and further consent to jurisdiction in Washington. (*Id.*) An additional provision in the MSA confirms that the contract "constitutes the entire agreement and understanding of the [p]arties and supersedes all prior oral or written agreements, understandings[,] or arrangements between them relating to the subject matter of this Agreement." (*Id.*)

Plaintiff contends that after Defendant commenced its services, in August of 2020 Defendant "intentionally released the software with no quality assurance testing whatsoever," which prompted the need for revision, "extended the development time[,] and brought about great cost to Kalypsys." (*Id.* ¶¶ 18–22.) Plaintiff alleges the issue "financially stress[ed]" the company because the cost of the Project far exceeded the initial estimate, and in the end Plaintiff "never received . . . a functioning product." (*Id.* ¶¶ 20–25.)

On February 1, 2022, Plaintiff filed a three-count Complaint in this Court alleging common law fraud, (Count One); violation of the New Jersey Consumer Fraud Act, (Count Two); and unjust enrichment, (Count Three). (*See generally* D.E. 1.) On March 1, 2022, Defendant filed the instant Motion to Dismiss and Refer the Matter to Arbitration. (D.E. 3.) The parties thereafter completed timely briefing. (D.E. 9, 10.)

## II.    STANDARD OF REVIEW

The FAA was enacted to ensure the enforcement of private arbitration agreements. *See, e.g.*, *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 344–45 (2011) (noting that "our cases place it beyond dispute that the FAA was designed to promote arbitration"); 9 U.S.C. § 2

(providing that written arbitration agreements "shall be valid, irrevocable, and enforceable"). "The FAA federalizes arbitration law and 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate . . . .'" *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136 (3d Cir. 1998) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)). Courts must refer parties to arbitration pursuant to an agreement to arbitrate "upon being satisfied that the issue involved in such suit or proceeding is referrable to arbitration under such an agreement." 9 U.S.C. § 3. To make such a determination, courts must examine whether (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (citations omitted). Additionally, courts "may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. [Courts] may also appoint arbitrators in accordance with the provisions of the agreement." 9 U.S.C. § 206.

### III. DISCUSSION

The first consideration is whether "a valid agreement to arbitrate exists." *See Kirleis*, 560 F.3d at 160. When a party contests the validity of an agreement to arbitrate and alleges fraud in the inducement, courts must analyze "whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967). "[A]n arbitration clause is 'severable' and independently enforceable from the rest of the contract in which it is contained." *MZM Constr. Co., Inc. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 397 (3d Cir. 2020) (quoting *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 105 (3d Cir. 2000)). Importantly, however, "a party cannot avoid arbitration by attacking the contract containing the arbitration clause as a whole . . . . Rather, the party opposing arbitration must challenge 'the arbitration clause itself.'" *Id.* (quoting *Prima Paint Corp.*, 388 U.S. at 403); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) (finding that unless a party challenges the arbitration delegation provision specifically, a court must find the agreement valid under § 2, and enforce it under §§ 3 and 4, thereby allowing the arbitrator to decide any challenge to the validity of the agreement).

Here, Plaintiff asserts in the Complaint that Defendant committed material misrepresentations about its quality assurance, which fraudulently induced Plaintiff to sign the MSA (Counts 1 and 2), and which unjustly enriched Defendant (Count 3). Plaintiff alleges that during the parties' negotiations concerning the provisions of the MSA, its representative "objected to the fact that the putative arbitration clause provided for arbitration in the state of Washington," and "requested that the putative arbitration clause be changed to provide for arbitration in New Jersey." (D.E. 1 ¶ 17.) Plaintiff further comments that Defendant's representative remarked about the arbitration clause, "Don't worry, we've never had to use it." (*Id.*)

Plaintiff's allegations in the Complaint, however, do not specifically attack the validity of the arbitration clause itself, and do not even hint that Plaintiff sought to actually exclude an arbitration clause from the MSA. In fact, Plaintiff's recounting of the negotiations in which these sophisticated parties engaged when drafting the MSA serves to demonstrate that it summarily agreed to arbitration but preferred the location of the arbitration to be New Jersey, should any such dispute arise. Plaintiff's additional commentary regarding Defendant's statement that it has not had occasion to arbitrate an issue with a client—the veracity of which Plaintiff does not even

challenge—does not suggest or amount to any form of fraudulent inducement to agree to arbitrate. Actually, it demonstrates that the parties each had an opportunity to discuss and examine the provisions of the MSA prior to signing it, and not only unequivocally agreed to submit to binding arbitration in Washington, but also agreed that any disagreement "shall be governed by the laws of the State of Washington." (*Id.* Ex A.)

Furthermore, the fact that the MSA stipulates that the agreement "constitutes the entire agreement and understanding of the [p]arties and supersedes all prior oral or written agreements, understandings[,] or arrangements between them relating to the subject matter of this Agreement" renders the pre-signing discussion of the location of arbitration wholly irrelevant. (*Id.*) A valid arbitration clause, therefore, exists. While Plaintiff contends that during negotiations it objected to arbitration in Washington as opposed to New Jersey, Plaintiff has not argued or demonstrated that the arbitration clause itself was fraudulently induced. It is, therefore, enforceable. *See MZM Constr. Co., Inc.*, 974 F.3d at 397; *see also Kirleis*, 560 F.3d at 160.

The second consideration is whether "the particular dispute falls within the scope of [the arbitration] agreement." *See Kirleis*, 560 F.3d at 160. The MSA's arbitration clause requires arbitration in Washington for "any claim or controversy arising out of this Agreement." (D.E. 1 Ex. A.) Plaintiff's challenge to the validity of the MSA contract as a whole fits squarely within the scope of "any claim or controversy." Because both the intent and scope of the arbitration provision clearly encompass the dispute at hand, the matter must be referred to arbitration in Washington. Therefore, this Court will grant Defendant's motion to refer the matter to arbitration and Plaintiff's claims will be dismissed.

## IV.     CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss the Complaint and Refer the Matter to Arbitration is **GRANTED**. An appropriate Order follows.

                                                               /s/ Susan D. Wigenton  
                                                           SUSAN D. WIGENTON, U.S.D.J

Orig:   Clerk  
cc:     Parties  
        Leda Dunn Wettre, U.S.M.J.